UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

MICHAEL J. FLEISHOUR and     )
MELISSA M. WORTMAN,          )
                             )
        Plaintiffs,          )
                             )
    vs.                      )        Case No. 4:08CV01958ERW
                             )
STEWART TITLE GUARANTY COMPANY, )
                             )
        Defendant.           )

## MEMORANDUM AND ORDER

This matter comes before the Court on Plaintiffs' Motion to Strike Affirmative Defenses

of Defendant Stewart Title Guarantee Company [doc. #9] and Defendant's Motion for Judgment

on the Pleadings [doc. #10].

## I.      MOTION TO STRIKE AFFIRMATIVE DEFENSES

Michael J. Fleishour and Melissa M. Wortman ("Plaintiffs") ask that the Court strike

Stewart Title Guaranty Company's ("Defendant") affirmative defenses.  They state that these

defenses "are immaterial and irrelevant, state mere legal conclusions and fail to set forth a short

and plain statement of the claim for each defense, are not true affirmative defenses, are legally

insufficient, fail to state a legal defense, and/or are inapplicable defenses under Missouri law."

Plaintiffs do not specify which arguments they direct to any one of the eleven defenses Defendant

raises in its answer.

The Federal Rules grant the Court the power to "strike from a pleading an insufficient

defense." Fed. R. Civ. P. 12(f). Although courts have "broad discretion" in deciding whether to strike a pleading, such an action is considered an "extreme measure." *Cynergy Ergonomics v. Ergonomic Partners Inc.*, 2008 WL 2817106, at *2 (E.D. Mo. July 9, 2008) (citing *Stanbury Law Firm v. IRS*, 221 F.3d 1059, 1063 (8th Cir. 2000)). Accordingly, motions to strike are viewed with disfavor by courts and are rarely granted. *Lunsford v. United States*, 570 F.2d 221, 229 (8th Cir. 1977).

This power is to be used cautiously as a defense should not be struck if it is "sufficient as a matter of law" or "presents a question of law or fact which the court ought to hear." *Id.* While the purpose of pleading an affirmative defense is to provide a plaintiff with notice and avoid surprise, under Fed. R. Civ. P. 8(c), a defendant is required to "plead only affirmative defenses, not evidence" or facts. *Venters v. City of Delphi*, 123 F.3d 956 (7th Cir. 1997); *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995); Fed. R. Civ. P. 8(c).

Plaintiff has presented no evidence that these affirmative defenses are not "sufficient as a matter of law." *Lunsford*, 570 F.2d at 229. Additionally, the Court sees no obvious deficiencies in Defendants' defenses, and in considering all allegations as true, Defendants raise appropriate questions of law and fact for the Court to consider. While Plaintiff may desire that more facts be provided in Defendant's defenses, the pleading requirements under the Federal Rules simply do not require a statement of the facts necessary to support the defense. As a result, these defenses are not insufficient under Fed. R. Civ. P. 12(f), and this Motion will be denied.

## II.    MOTION FOR JUDGMENT ON THE PLEADINGS

### A.    *BACKGROUND*

Plaintiffs are residents of Saint Louis County, Missouri. They purchased a title insurance policy ("Policy") from Defendant, a Texas insurance corporation, authorized to do business in Missouri. The Policy was issued in connection with property located at 749 Tree Top Ridge Drive, St. Louis County, Missouri ("Property"). Defendant agreed to insure Plaintiffs against loss or damage, not exceeding $121,500 (the "Amount of Insurance"), sustained or incurred by Plaintiffs by reason of the title to the Property not being vested in Plaintiffs in fee simple on February 22, 2008; by reason of the unmarketability of the title on February 22, 2008; or by reason of any defect, lien, or encumbrance on the title on February 22, 2008.

On July 16, 2008, Plaintiffs were served with process in a lawsuit seeking to quiet title to a portion of the Property by reason of Audrey Silberman's alleged adverse possession.[1] Plaintiffs assert that Defendant is contractually obligated under the Policy to provide for their defense in this lawsuit or to pay them the full Amount of Insurance.

Paragraph 5(a) of the Policy sets forth the terms of the Defendant's duty to provide a defense for Plaintiffs in actions covered by the Policy. It states:

**5. DEFENSE AND PROSECUTION OF ACTIONS**
(a) Upon written request by the Insured, and subject to the options contained in Section 7 of these Conditions, [Defendant], at its own cost and without unreasonable delay, shall provide for the defense of an Insured in litigation in which any third party asserts a claim covered by this policy adverse to the Insured.

Section 7 describes Defendant's options to pay or settle claims. It states:

**7. OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS;**

---

[1] *Silberman v. Fleishour* was filed in St. Louis County Circuit Court, Division 35. *See* Case No. 08SL-CC02506.

**TERMINATION OF LIABILITY**

In case of a claim under this policy, [Defendant] shall have the following options:

   (a) To Pay or Tender Payment of the Amount of Insurance.  To pay or tender payment of the Amount of Insurance under this policy together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by [Defendant] up to the time of payment or tender of payment and that [Defendant] is obligated to pay.   Upon the exercise by [Defendant] of this option, all liability and obligations of [Defendant] to the Insured under this policy, other than to make the payment required in this subsection, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

   (b) To Pay or Otherwise Settle With Parties Other Than the Insured or With the Insured Claimant.

      (i) To pay or otherwise settle with other parties for or in the name of an Insured Claimant  any claim insured against under this policy.  In addition, [Defendant] will pay any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by [Defendant] up to the time of payment and that [Defendant] is obligated to pay; or

      (ii) To pay or otherwise settle with the Insured Claimant the loss or damage provided for under this policy, together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by [Defendant] up to the time of payment and that [Defendant] is obligated to pay.

Upon the exercise by [Defendant] of either of the options provided for in subsections (b)(i) or (ii), [Defendant's] obligations to the insured under this policy for the claimed loss or damage, other than the payments required to be made, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

Section 8 follows with the terms that limit Defendant's liability under the Policy, specifically Defendant's liability "shall not exceed the lesser of (i) the Amount of Insurance; or (ii) the difference between the value of the Title as insured and the value of the Title subject to the risk insured against by this policy."

After Plaintiffs gave Defendant written notice of the adverse possession lawsuit and requested that a defense be provided, Defendant offered to pay $1000, deeming that amount the difference between the value of the title as insured and the value of the title subject to the risk

insured against by the Policy. Plaintiffs then filed this declaratory judgment action, asking that the Court determine the parties' rights, obligations, and liabilities under the Policy. Defendant seeks a judgment on the pleadings, arguing that there are no disputed facts, that the terms of the Policy are unambiguous, and that by tendering payment to Plaintiffs for their "loss or damage" in accordance with Paragraph 7(b)(ii) of the Policy, any obligation to defend Plaintiffs in the adverse possession lawsuit terminated.

## B.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In deciding a motion for judgment on the pleadings, this Court will "accept all facts pled by the nonmoving party as true and draw all reasonable inferences from the facts in favor of the nonmovant." *Waldron v. Boeing Co.*, 388 F.3d 591, 593 (8th Cir. 2004) (citing *Franklin High Yield Tax-Free Income Fund v. County of Martin*, 152 F.3d 736, 738 (8th Cir. 1998)). This is a strict standard, as "[j]udgment on the pleadings is not properly granted unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." *United States v. Any & All Radio Station Transmission Equip.*, 207 F.3d 458, 462 (8th Cir. 2000).

## C.    DISCUSSION

The Policy declares that "the law of the jurisdiction where the Land is located" shall apply to determine the validity of claims against title and "to interpret and enforce the terms of th[e] policy." This Court will therefore apply Missouri law to this diversity contract dispute, as the

land covered by the Policy is located in Missouri, giving the state the contact necessary to create state interests so that "choice of its law is neither arbitrary nor fundamentally unfair." *Medtronic, Inc. v. Gibbons*, 684 F.2d 565, 568 (8th Cir. 1982) (quoting *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 313 (1981)); *see also Bannister v. Bemis Co.*, 556 F.3d 882, 884 (8th Cir. 2009) (applying state law to a diversity contract dispute in accordance with the contract's choice-of-law clause).

When interpreting insurance policies, courts must give words "their plain meaning, consistent with the reasonable expectations, objectives, and intent of the parties." *Standard Artificial Limb, Inc. v. Allianz Ins. Co.*, 895 S.W.2d 205, 209 (Mo. Ct. App. 1995) (citing *Chase Resorts, Inc. v. Safety Mut. Cas. Corp.*, 869 S.W.2d 145, 150 (Mo. Ct. App. 1993)). Any limitations or exceptions within the Policy are "construed strictly against the insurer." *Id.* (citing *Chase Resorts, Inc.*, 869 S.W.2d at 150). Ambiguity exists if the Policy is reasonably open to alternative constructions due to "duplicity, indistinctness, or uncertainty of meaning." *Id.* (citing *Chase Resorts, Inc.*, 869 S.W.2d at 150). When determining whether the Policy is ambiguous, "the language is considered in the light in which it would normally be understood by the lay person who bought and paid for the policy." *Heringer v. Am. Family Mut. Ins. Co.*, 140 S.W.3d 100, 103 (Mo. Ct. App. 2004) (citing *Kellar v. Am. Family Mut. Ins. Co.*, 987 S.W.2d 452, 455 (Mo. Ct. App. 1999)).

The Parties here dispute their respective rights and obligations under the Policy. Plaintiffs claim that Defendant must provide a defense in the adverse possession lawsuit or pay them the Amount of Insurance. Defendant asserts that by offering to pay or tendering the difference between the value of the title as insured and the value of the title subject to the risk insured

against, it acted consistently with the terms of the Policy and any further obligation to defend Plaintiffs terminated.

Section 5 of the Policy requires Plaintiffs to request in writing that Defendant provide a defense when a third party brings an adverse claim against the insured. The duty to defend is triggered when a lawsuit against the insured "alleges facts which state a claim potentially or arguably within policy coverage." *Bonner v. Auto. Club Inter-Ins. Exch.*, 899 S.W.2d 925, 929 (Mo. Ct. App. 1995) (citing *Luyties Pharmacal Co. v. Frederic Co.*, 716 S.W.2d 831, 834-35 (Mo. Ct. App. 1986)). The duty is contractual, and as a result, the Parties may contractually limit this duty. *See id.*; *Zipkin v. Freeman*, 436 S.W.2d 753, 754 (Mo. 1968) ("[I]nsurer's duty to defend is determined from the policy provisions and the allegations of the [third party's] petition.").

Here, when Plaintiffs were served in the adverse possession case, they made a written request that Defendant provide them with a defense. Both Parties agree that the claim for adverse possession amounts to a defect in or encumbrance on Plaintiffs' title, adversely affecting Plaintiffs' ownership of the Property. The Policy insures against such defects or encumbrances in title. Therefore, the adverse possession lawsuit is within the Policy's coverage, and Defendant's duty to defend was triggered after Plaintiffs made the written request. However, Section 5 clearly indicates that there are some limitations on Defendant's duty to defend, as it expressly states that the obligation is subject to the options detailed in Section 7 of the Policy.

Section 7 provides three means by which Defendant can pay or settle claims, and the language unambiguously declares that upon the exercise of such an option, Defendant's

obligations to the insured, including the obligation to defend, shall terminate. Defendant's options are paying the Amount of Insurance, entering a settlement with the third party, or paying the insured the loss or damage provided for under the Policy, along with other expenses incurred that were authorized by Defendant and that Defendant is obligated to pay. The next section goes on to explain that the loss or damage will be the lesser of the Amount of Insurance or the difference in the value of the title as insured and the value of the title subject to the risk insured against. The plain meaning of the language makes it clear to a lay person who purchases this Policy that Defendant's duty to defend is extinguished if Defendant exercises one of these three options.

Defendant asserts that it exercised the third option in Section 7 when it "offered to pay or tender the difference between the value of the title as insured and the value of the title subject to the risk insured against," thereby terminating its duty to defend in the adverse possession case. Plaintiffs respond that Defendant offered them $1,000 to fully satisfy the obligation to pay the loss or damage provided for under the Policy, and they state that Defendant determined this amount on its own, without any discussion with Plaintiffs regarding the value of the title subject to the risk insured against. As Plaintiffs note, the Policy does not address who should determine the difference between the value of title as insured and the value of title subject to the risk insured against, and no process or mechanism for making such a determination is provided. This uncertainty leaves the provision allowing Defendant to pay the loss or damage provided for under the Policy open to alternative reasonable constructions. Defendant failed to explain how it calculated the $1,000 amount, but it appears to have been determined unilaterally. Plaintiffs suggest this approach was not within their understanding when they purchased the Policy and is

inconsistent with their reasonable objectives and intent.

The uncertainty in this provision and the alternative interpretations by the Parties demonstrate that there is ambiguity here. Ambiguity in an insurance Policy is construed against the insurer. *Robin v. Blue Cross Hosp. Serv., Inc.*, 637 S.W.2d 695, 698 (Mo. 1982) (citing *Meyer Jewelry Co. v. Gen. Ins. Co. of Am.*, 422 S.W.2d 617, 623 (Mo. 1968)). Here, the ambiguity appears in a limitation of the insurer's duty to defend, and such limitations are strictly construed against the insurer. *Standard Artificial Limb, Inc.*, 895 S.W.2d at 209 (citing *Chase Resorts, Inc.*, 869 S.W.2d at 150). Following these rules of construction, it appears highly doubtful that Defendant can exercise its option of paying Plaintiff the loss or damage provided for under the Policy by unilaterally determining that the loss or damage is $1,000. As previously noted, it is unclear exactly how Defendant calculated the loss or damage at $1,000. More information is necessary in order to interpret what the ambiguous provision in the Policy requires and to determine whether Defendant's tender of $1,000 was a valid exercise of its option to pay the loss or damage provided for under the Policy, thereby extinguishing its duty to defend.

The information necessary to make these determinations is not available from the Parties' pleadings. While Defendant argues that this Court can determine the rights and obligations of the Parties without considering the disagreement over the value of title, it is not possible to declare that Defendant has properly exercised an option extinguishing its duty to defend without considering what the Policy requires. If Defendant did pay the loss or damage provided for under the Policy in accordance with the Policy's requirements, the Policy unambiguously states that the duty to defend terminated. However, after drawing all reasonable inferences in favor of Plaintiffs,

it is clear that material issues of fact relating to the contract's requirements and the value of the property subject to the risk insured against must be resolved before it can be determined whether Defendant must provide a defense in the adverse possession case and whether there has been a breach of the insurance contract. Thus, a judgment on the pleadings is inappropriate.

## D.     CONCLUSION

Judgment on the pleadings is only granted if the moving party demonstrates that there are no unresolved material issues of fact, entitling the party to judgment as a matter of law. Defendant provided no response to Plaintiffs' allegations that the offer of $1000 did not satisfy its option of paying the loss or damage provided for under the Policy in order to terminate the duty to defend because the Policy was ambiguous in regards to how the amount was to be calculated. Accepting the facts pled by Plaintiffs as true, and drawing all reasonable inferences from them, it is clear that unresolved material issues of fact remain. Therefore, Defendant is not entitled to judgment as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Strike Affirmative Defenses of Defendant Stewart Title Guarantee Company [doc. #9] is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Motion for Judgment on the Pleadings [doc. #10] is **DENIED**.

Dated this 16th day of July, 2009.

E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE