UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MICHAEL J. FLEISHOUR , et al., )<br>)<br>Plaintiffs, )<br>)<br>vs. )<br>)<br>STEWART TITLE GUARANTY COMPANY, )<br>)<br>Defendant. ) | Case No. 4:08CV01958 |

## **MEMORANDUM OPINION**

This matter comes before the Court on a Non-Jury Trial to address the claims of Plaintiffs Michael J. Fleishour and Melissa Wortman's ("Plaintiffs") in their Complaint [doc. #5]. A one-day trial of Plaintiffs' claims was held before the Court on March 22, 2010.

### I. FINDINGS OF FACT

This litigation arises out of a quiet title action by a third party against Plaintiffs Michael J. Fleishour and Melissa M. Wortman (collectively, "Plaintiffs" or "the Fleishours"), which led Plaintiffs to seek to establish their rights under a policy of title insurance ("the policy") issued to them by Defendant Stewart Title Guaranty Company ("Defendant").

Plaintiffs and Defendant entered into the policy on February 22, 2008, in connection with Plaintiffs' purchase of a piece of real property in Valley Park, Missouri. In connection with the purchase, Plaintiffs were represented by a broker, Gail Ruebsam ("Ruebsam"), and Jane Nuckolls ("Nuckolls") acted as broker for the seller, Mission Gate Christian Ministries. Some time before the sale was completed, Plaintiffs and the seller's president, Patricia Mathes ("Mathes"), became aware that a retaining wall had to be replaced in order to obtain an occupancy permit from the City of Valley Park, and this required a boundary stake survey of the property. When the stakes

were placed on the property, Plaintiffs' future next-door neighbor, Audrey Silberman ("Silberman"), noticed that the surveyed area included an area of land that she believed belonged to her, a triangular area of approximately 1,100 square feet that Silberman had been landscaping for approximately ten years.

Shortly thereafter, Silberman faxed letters to Mathes and Ruebsam, stating that she was claiming ownership of that portion of the property by adverse possession, and then, after receiving no response, she called Nuckolls and Ruebsam to deliver the same information. Nuckolls conferred with her managing broker about the issue, and they apparently concluded that Silberman's claim was not valid, and decided to proceed with the sale. Silberman stated that she was told by someone at Ruebsam's office to contact the seller concerning her claim, but testimony was unclear as to whether she spoke with Ruebsam personally. At the closing on February 21, 2008, Mathes raised the issue of Silberman's claim, and Ruebsam and Nuckolls both indicated that there was no problem with proceeding with the transaction.

In late March of 2008, Silberman approached Plaintiffs personally, suggesting that they settle the matter by transferring the disputed portion to her in exchange for $1,000, and she also sent them a letter to the same effect. Plaintiffs refused to do so, and then, in late April, Plaintiffs received a letter from Silberman's attorney, stating that she intended to take legal action if they continued to refuse to transfer the property to her. Plaintiffs responded by retaining Thomas Federer ("Federer") as legal counsel, and Federer proceeded by submitting a claim to Defendant on May 14, 2008. From that point on, all communications concerning Plaintiffs' claim took place between Federer and Bradley Farney ("Farney"), Defendant's claims counsel.

Farney responded to Plaintiffs' claim by requesting that Federer provide Defendant with a calculation of the diminution in value of Plaintiffs' property if they lost title to the disputed

2

portion. After Farney had requested this information several times over a period of weeks, Federer contacted Farney and told him that he did not know the amount and did not believe it to be relevant, believing that it was Defendant's responsibility under the policy to address Silberman's claim. Farney explained that Defendant's position was that the policy gave Defendant the option of paying the diminution in value of Plaintiffs' land to satisfy its obligations under the policy – that is, that Defendant could pay that amount instead of defending against Silberman's claim. In early July, Federer informed Farney that Silberman intended to file a suit to quiet title to the disputed portion, and asserted that Defendant was obligated to pay the full amount of the policy – $121,500 – to avoid its duty to defend against Silberman's suit, because Plaintiffs would not have purchased the property if they had known about the issue.

    In late June, Farney also spoke with Nuckolls and Ruebsam as part of his investigation of Plaintiffs' claim. Nuckolls informed him that Ruebsam definitely knew about Silberman's claim because she and Ruebsam had had several conversations about it prior to closing. When Farney spoke to Ruebsam, however, she provided a different account, stating that she had no knowledge of the claim until after closing. The Court is persuaded, based on testimony from Mathes and Nuckolls, that Ruebsam did in fact know about the claim at the time of closing. Mathes stated that she, Nuckolls, and Ruebsam discussed the issue at the closing, at which point the parties indicated that they were nevertheless ready to proceed with the sale. Nuckolls stated that she had multiple conversations with Ruebsam concerning Silberman's claim. As noted above, Silberman also related that she personally contacted Ruebsam's firm about the issue, and sent notice to Ruebsam as well. Neither party offered any testimony from Ruebsam, and apart from Farney's testimony concerning his conversation with her, there was no other evidence offered that would support the inference that she was unaware of the claim, and the evidence to the contrary was

3

persuasive. It is undisputed, however, that neither Ruebsam nor any other party passed this information on to Plaintiffs prior to closing. Additionally, Defendant established through Farney's testimony that there was no indication of Silberman's claim in the public records, and that Defendant had no knowledge of it before Federer submitted Plaintiffs' claim under the policy.

On July 16, 2008, Plaintiffs received service of process in Silberman's adverse possession suit against them. Federer forwarded a copy of the petition to Farney, formally requesting an acknowledgment in writing that Defendant would be providing their defense, and Farney responded by again requesting documentation about Plaintiffs' anticipated loss. Farney and Federer then repeated the substance of their earlier exchanges, with Farney seeking to establish the diminution in value of Plaintiffs' property in order to tender that amount, and Federer maintaining that Defendant had a duty to defend regardless of the extent of its liability for damages under the policy. Apparently sensing that the parties had reached an impasse, Farney commissioned his own appraisal of the property, and the appraiser determined that the disputed portion was worth $1,000. Farney tendered payment of this amount to Federer, who refused on behalf of Plaintiffs. At some point after Silberman filed the suit, Farney also spoke with Silberman's attorney in an attempt to settle the claim with her directly, but her attorney indicated that Silberman was not interested in a settlement because she wanted to obtain title to the disputed portion.

Plaintiffs then proceeded to file the present suit against Defendant, seeking a declaratory judgment and damages. In their Count I, Plaintiffs request a declaratory judgment that the policy obligated Defendant to provide their defense in the underlying suit or pay them $121,500, representing the full amount of the policy, and this Count also seeks to recover their attorneys' fees from the Silberman suit and present suit. Plaintiffs' Count II alleges that Defendant breached

4

the insurance contract by refusing to accept coverage and provide their defense in the underlying suit, and seeks damages in the full amount of the policy.

In connection with discovery in this case, Plaintiffs obtained their own appraisal of the disputed section, which returned a value of $3,700. Plaintiffs have since refused an offer from Defendant to pay this amount, but the parties are in agreement that it represents the diminution in value of Plaintiffs' property for purposes of this litigation.

## II. ANALYSIS

Plaintiffs contend that Defendants' duty to defend under the title insurance contract extended to Silberman's claim against their property, and that Defendant's only means of fulfilling that obligation was to either (1) provide their defense or (2) tender the full amount of the policy, $121,500. Because Defendant refused both of those options, Plaintiffs assert that Defendant breached the insurance contract and is liable to Plaintiffs for the attorneys' fees they incurred in defending themselves against Silberman's suit, and in the present suit to establish that liability.

Defendant argues that certain policy provisions exempt coverage of Plaintiffs' claim, and therefore absolved Defendant of any duty to provide Plaintiffs' defense against Silberman's suit, in that (a) Plaintiffs had knowledge of the claim through Ruebsam, their broker, before the parties entered into the title insurance contract; and (b) Silberman's claim involved a discrepancy between the property's actual boundaries and its apparent boundaries. In the alternative, Defendant contends that Plaintiffs' claims fail because the policy permits it to satisfy its duty to defend against third-party claims by tendering the amount of loss that would result from such claims, an offer which Defendant made and Plaintiffs rejected.

The parties agree that this contract dispute is governed by Missouri law, under which the interpretation of contractual terms is a question of law. *Columbia Mut. Ins. Co. v. Schauf*, 967

S.W.2d 74, 76 (Mo. 1998) (en banc). In interpreting an insurance policy, courts must give words "their plain meaning, consistent with the reasonable expectations, objectives, and intent of the parties." *Standard Artificial Limb, Inc. v. Allianz Ins. Co.*, 895 S.W.2d 205, 209 (Mo. Ct. App. 1995) (internal citations omitted). A policy will be found to be ambiguous, however, if it is reasonably open to alternative constructions due to "duplicity, indistinctness, or uncertainty of meaning." *Chase Resorts, Inc. v. Safety Mut. Cas. Corp.*, 869 S.W.2d 145, 150 (Mo. Ct. App. 1993). Furthermore, the court should evaluate the policy's language "in the light in which it would normally be understand by the lay person who bought and paid for the policy" in assessing whether it is in fact ambiguous. *Heringer v. Am. Family Mut. Ins. Co.*, 140 S.W.3d 100, 103 (Mo. Ct. App. 2004) (internal citations omitted). Ambiguous policy provisions, along with those that purport to restrict or eliminate coverage, are construed strongly against the insurer. *See Green v. Penn-America Ins. Co.*, 242 S.W.3d 374, 383 (Mo. Ct. App. 2007) (ambiguous provisions); *Crossman v. Yacubovich*, 290 S.W.3d 775, 779 (Mo. Ct. App. 2009) (provisions limiting coverage).

### A.     Whether Silberman's Suit Gave Rise to the Duty to Defend

"The duty to defend is broader than the duty to indemnify," and it "arises whenever there is a potential or possible liability to pay based on the facts at the outset of the case and is not dependent on the probable liability to pay based on the facts ascertained through trial." *McCormack Baron Mgmt. Servs., Inc. v. American Guarantee & Liab. Ins. Co.*, 989 S.W.2d 168, 170 (Mo. 1999) (internal citations omitted). Where the insurer argues that it had no duty to defend based on a policy exclusion placing a third party's claim outside the policy's coverage, the insurer has the burden of demonstrating that the exclusion applies. *American Family Mut. Ins. Co. v. Tickle*, 99 S.W.3d 25, 28 (Mo. Ct. App. 2003). An insurer that mistakenly, but in good

6

faith, refuses to defend its insured on the basis that the claim is not covered by the policy, is nevertheless liable to the insured for breach of contract. *Whitehead v. Lakeside Hosp. Ass'n*, 844 S.W.2d 475, 481 (Mo. Ct. App. 1992) (citing *Kelso v. Kelso*, 306 S.W.2d 534, 540 (Mo. 1957)).

"The duty to defend is determined by comparing the language of the insurance policy with the allegations in the complaint," and "[i]f the complaint merely alleges facts that give rise to a claim potentially within the policy's coverage, the insurer has a duty to defend." *McCormack*, 989 S.W.2d at 170-71 (internal citations omitted). As a result, an insurer is not entitled to refuse to defend a third party's claim against its insured based on its conclusion that the third party's claim would be subject to a motion to dismiss for failure to state a claim. *Truck Ins. Exch. v. Prairie Framing, LLC*, 162 S.W.3d 64, 83 (Mo. Ct. App. 2005). That said, the insurer is not limited to the allegations in the third party's complaint in determining whether it has a duty to defend; "[i]f additional facts are ascertained which show that the action is not within the coverage of the policy, the insurer is not obligated to afford a defense." *Standard Artificial Limb, Inc. v. Allianz Ins. Co.*, 895 S.W.2d 205, 210 (Mo. Ct. App. 1995).

Thus, the starting point for the Court's analysis is to determine whether Silberman's petition "allege[d] facts that give rise to a claim potentially within the policy's coverage," *McCormack*, 989 S.W.2d at 170-71, and then, if it does, the Court assesses whether Defendant became aware of additional facts placing Silberman's claim outside the policy's coverage. *Standard Artificial Limb*, 895 S.W.2d at 210. Silberman's complaint, styled as a "Petition for Adverse Possession," contains the following substantive allegations[1]:

---

[1] To avoid confusion given that Plaintiffs here are referred to as "Defendants" in Silberman's petition, the Court has altered the following so that Silberman is referred to only as "Silberman," and Plaintiffs are "the Fleishours."

7

1. Silberman is an individual and the owner of real property having a street address of 745 Tree Top Ridge Drive, Valley Park, Missouri 63088 in St. Louis County, Missouri ("Silberman's Property").

2. Defendants are owners of real property having a street address of 749 Tree Top Ridge Drive, Valley Park, Missouri 63088 in St. Louis County, Missouri ("The Fleishours' Property").

3. Silberman has continuously owned and occupied Silberman's Property since 1993.

4. Silberman's Property and the Fleishours' Property are next door to each other and share a common border.

5. During the entire time that Silberman has owned and occupied Silberman's Property, she has occupied, possessed, maintained, cultivated, improved, landscaped, and treated as her own a portion of the Fleishours' Property, more specifically described on the attached Exhibit A which is hereby incorporated by reference as if fully described herein. The property described on Exhibit A is referred to herein as the "Adverse Property."

6. From 1993 to the date of filing this petition, and as required by §516.010 RSMo., Silberman has continuously claimed a right to the Adverse Property by entering on to [sic] and continuously maintaining the Adverse Property.

7. From 1993 to the date of filing this petition, Silberman has continuously believed that she was rightful owner of the Adverse Property to the exclusion of all others and adverse to the Fleishours and the preceding owners of the Fleishours' Property.

8. From 1993 to the date of filing this petition, Silberman has actually possessed the Adverse Property.

9. From 1993 to the date of filing this petition, Silberman has openly and notoriously possessed the Adverse Property.

10. From 1993 to the date of filing this petition, Silberman has exclusively possessed the Adverse Property.

11. Silberman has acquired title to the Adverse Property.

The Court concludes, and Defendant appears to concede, that the facts alleged in Silberman's petition demonstrate that her claim is a Covered Risk under the policy, pursuant to Covered Risk 2(c):

> Any defect in or lien or encumbrance on the Title. This Covered Risk includes but is not limited to insurance against loss from . . . [a]ny encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete survey of the Land. The term "encroachment" includes encroachments of existing improvements located on the Land onto adjoining land, and encroachments onto the Land of existing improvements located on adjoining land.

Whether characterized as an "encroachment" or an "adverse circumstance" that "would be disclosed by an accurate and complete survey of the Land," it is clear that the risk of losing title to a portion of the insured property due to a successful adverse possession claim is within the scope of this provision. Farney, a claims counsel for Defendant, agreed that an adverse possession claim is a covered risk under this policy.

As noted above, however, Defendant contends that although Silberman's claim might initially appear to be covered by the policy, it was entitled to refuse to provide Plaintiffs' defense based on two applicable policy provision that restrict coverage. First, there is Exclusion 3(b), which excludes the following from coverage under the policy:

> Defects, liens, encumbrances, adverse claims, or other matters . . . not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy.

"Known" is a defined term under the policy, requiring "[a]ctual knowledge, not constructive knowledge or notice that may be imputed to an Insured by reason of the Public Records or any other records that impart constructive notice of matters affecting the Title." Under Missouri law, the knowledge of a real estate broker is imputed to her principal. *Rainey v. Foland*, 555 S.W.2d 88, 92 (Mo. Ct. App. 1977). Thus, Defendant argues, it properly refused to defend against Silberman's claim because Defendant was aware that Ruebsam, Plaintiffs' broker, knew about Silberman's claim before Plaintiffs and Defendant entered into the policy. The other provision on which Defendant relies is Special Exception 13, which states that the policy does not insure

9

against loss or damage due to "[a]ny discrepancy between the actual boundaries of the land and the apparent boundaries as indicated by fences, planting or other improvements." Defendant claims that Silberman's landscaping of the disputed portion created the apparent boundary, and that her claim therefore was not covered because it resulted from a discrepancy between that apparent boundary, and the actual boundary as revealed by the stake survey.

Irrespective of whether these provisions do in fact preclude coverage, these arguments fail because Defendant did not establish at trial that it relied on these provisions in refusing to provide Plaintiffs' defense. *See McCormack*, 989 S.W.2d at 170 ("The duty to defend arises whenever there is a potential or possible liability to pay *based on the facts at the outset of the case* . . . .") (emphasis added); *American Family Mut. Ins. Co. v. Tickle*, 99 S.W.3d 25, 28 (Mo. Ct. App. 2003) (insurer has burden of demonstrating applicability of exclusion when claiming that exclusion absolved it of duty to defend). In fact, the evidence at trial demonstrated that Defendant accepted coverage of the claim – Farley specifically stated that "coverage was never denied" – and it sought to fulfill its policy obligations by tendering the diminution in value of the insured property. With respect to the "actual knowledge" exclusion, Farney testified that Ruebsam specifically told him that she did not know about Silberman's claim until after closing, directly contradicting a statement from Nuckolls, the seller's broker, that Nuckolls and Ruebsam had discussed Silberman's claim. Because it was in possession of two contradictory statements concerning Ruebsam's knowledge, Defendant could only have concluded that this exclusion was potentially applicable; stated inversely, any loss resulting from Silberman's claim was potentially covered by the policy, and Defendant therefore could not have properly decided that it had no duty to defend. As for Special Exception 13, there was no evidence whatsoever that Defendant ever relied on that provision; the only testimony concerning the Exception was Farney's statement

10

that he did not initially deny coverage based on it because he did not have enough information to know whether it applied. Again, any argument that Defendant decided it had no duty to defend based on a lack of coverage is belied by Farney's concession that Defendant never intended or took any action to actually deny coverage.

Thus, regardless of whether these provisions bar coverage under the policy, they did not provide Defendant with grounds for refusing to defend Plaintiffs against Silberman's adverse possession suit because Defendant did not know whether they were applicable when it refused to defend the claim. As such, the Court turns to Defendant's argument that it met its policy obligations by tendering to Plaintiffs the anticipated amount of their loss.

### B. Whether Defendant Could Satisfy Its Duty to Defend by Tendering Payment to Plaintiffs of Their Anticipated Loss

Section 5(a) of the policy sets forth Defendant's duty to defend:

> Upon written request by the Insured, and subject to the options contained in Section 7 of these Conditions, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an insured in litigation in which any third party asserts a claim covered by this policy adverse to the Insured. . . . .

As stated, this duty is subject to Section 7 of the policy, and in addition to the option of paying the full amount of the policy, Section 7(b) provides Defendant with two additional options for paying or settling claims, and it also sets forth the consequences of electing such an option:

> (b) To Pay or Otherwise Settle With Parties Other Than the Insured or With the Insured Claimant
> (i) To pay or otherwise settle with other parties for or in the name of an Insured Claimant any claim insured against under this policy. . . . .
> (ii) To pay or otherwise settle with the Insured Claimant the loss or damage provided for under this policy, together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay.
> Upon the exercise by the Company of either of the options provided for in subsection (b)(i) or (ii), the Company's obligations to the Insured under this policy for the

claimed loss or damage, other than the payments required to be made, shall terminate, including any liability or obligations to defend, prosecute, or continue any litigation.

Section (b)(ii) is the relevant section here, describing payment to or settlement with the insured, and the "loss or damage provided for under this policy" set forth in that provision is defined in Section 8:

> (a) The extent of liability of the Company for loss or damage under this policy shall not exceed the lesser of:
> (i) the Amount of Insurance; or
> (ii) the difference between the value of the Title as insured and the value of the Title subject to the risk insured against by this policy.

With respect to determining the precise amount of a claimed loss, Section 4 permits Defendant to require an insured to provide it with a proof of loss:

> In the event the Company is unable to determine the amount of loss or damage, the Company may, at its option, require as a condition of payment that the Insured Claimant furnish a signed proof of loss. The proof of loss must describe the defect, lien, encumbrance, or other matter insured against by this policy that constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage.

Defendant argues that it made the election provided for in Section 7(b)(ii), to pay or otherwise settle with Plaintiffs, and then it sought to calculate Plaintiffs' loss pursuant to Section 8(a)(ii), which would be the value of the portion of their property claimed by Silberman. In order to do so, Defendant then requested Plaintiffs to furnish the proof of loss provided for in Section 4. It is undisputed that Plaintiffs failed to do so, and thus, according to Defendant, Plaintiff breached its duties under the policy and Defendant was no longer required to perform its corresponding obligations – that is, it did not need to defend Plaintiffs against Silberman's suit.

The Court disagrees, concluding instead that Defendant had no option to pay the amount of Plaintiffs' "loss or damage" in the face of Silberman's threatened or pending lawsuit because until that suit was concluded, Plaintiffs had not sustained any actual "loss or damage" under the

policy – a contract of indemnity – for which Defendant could indemnify them. *See McCormack*, 989 S.W.2d at 173 (indemnification obligation "arises only after the suit by the third party is successful and the insurer becomes obligated to pay the resulting judgment") (internal quotations and citation omitted). The plain language of the policy supports this conclusion. The portion of Section 8 that precedes the means of calculating "loss or damage" states that "this policy is a contract of indemnity against *actual monetary loss or damage sustained or incurred by the Insured Claimant* who has suffered loss or damage by reason of matters insured against by this policy." (emphasis added). Thus, Defendant could not elect its Section 7(b)(ii) option – paying to the insured the "loss or damage" provided for in the policy – and then resort to Section 8(a) to calculate the extent of its liability for "loss or damage," because no "actual monetary loss or damage" had at that point been sustained. Likewise, Plaintiffs were not in breach for failing to provide a proof of loss, because when such proof was requested they had not incurred any loss.

If Defendant's interpretation were correct – that it is entitled to pay the anticipated loss to satisfy its duty to defend – then it would only ever provide an insured's defense in cases in which it concludes both that (1) the third party's claim has no merit; and (2) the anticipated litigation costs are less than the insured's anticipated loss – an absurd result that is contrary to a title insurance purchaser's understanding of the product. *See CB Commercial Real Estate Group, Inc. v. Equity P'Ships Corp.*, 917 S.W.2d 641, 646-47 (Mo. Ct. App. 1996) (court's contract interpretation "should not reach an absurd or unreasonable results" and should be compatible with "the general understanding of the parties regarding the contract"). Generally speaking, in situations in which Defendant concludes that a claim has merit, it would never have any reason to incur any litigation expenses under its interpretation because it could simply pay the amount of the insured's loss should the claimant's suit be successful. In cases in which it believes that the claim

13

has no merit, Defendant would look to the anticipated litigation costs, and if those costs are greater than the anticipated loss, it would likewise choose to pay the anticipated loss. This result seems especially unfair in cases such as this where the insureds are faced with a pending lawsuit that they cannot settle. Because Silberman was interested only in establishing title to the disputed portion, Defendant's interpretation in these circumstances would effectively shift the risk of litigation to Plaintiffs, which is contrary to the terms of the policy. When Plaintiffs purchased the policy, it was to insure the validity of their title. In short, the Court finds that an interpretation of this policy that precludes a duty to defend against meritorious claims, and against meritless claims where the anticipated litigation costs are greater than the anticipated loss, would be an "absurd" result that distorts the purpose of title insurance.

The Court therefore finds that Defendant could not relieve itself of its duty to defend against Silberman's adverse possession suit by paying to Plaintiffs, its insured, their anticipated loss should Silberman's claim have been successful. The plain language of the policy does not give Defendant the option to indemnify its insureds for losses that have not yet been sustained, and this interpretation is supported by common sense and the reasonable expectations of purchasers of title insurance. As such, Defendant breached its duty to defend under the policy by adhering to its interpretation and refusing to accept the defense of Silberman's claim.[2]

## C. Whether Defendant Has a Duty to Indemnify Plaintiffs

Silberman's suit against Plaintiffs was ultimately successful, which leads to the question of whether Defendant now has the duty to indemnify Plaintiffs for their loss.[3] Defendant contends

---

[2] The issue of damages is discussed below in Section II.D.

[3] Judgment was entered in favor of Silberman on her adverse possession claim on January 26, 2010 in the Circuit Court of St. Louis County. As such, this issue is now ripe for resolution, even though it was not when Plaintiffs filed this lawsuit.

that there is no coverage under this policy, based on the same policy provisions it asserted above in arguing that it had no duty to defend: those precluding coverage for unrecorded title matters of which the insured has actual knowledge and for losses arising out of discrepancies between actual and apparent boundaries.

In contrast to the Court's findings with respect to Defendant's duty to defend, an insurer's failure to initially assert the correct grounds for denying coverage cannot provide the basis for a subsequent finding of coverage, because "[t]he duty to indemnify is determined by the facts as they are established at trial or as they are finally determined by some other means, for example through summary judgment or settlement." *McCormack Baron Mgmt. Servs., Inc. v. American Guarantee & Liab. Ins. Co.*, 989 S.W.2d 168, 173 (Mo. 1999). Waiver and estoppel doctrines are likewise inapplicable, because under Missouri law, these doctrines "are unavailable to create insurance where it would not otherwise exist by bringing within the coverage of an insurance policy risks not covered by its terms or expressly excluded therefrom." *Century Fire Sprinklers, Inc. v. CNA/Transp. Ins. Co.*, 87 S.W.3d 408, 417 n.2 (Mo. Ct. App. 2002) (internal quotations and citations omitted).

The Court concludes that Defendant has met its burden of showing that the actual knowledge exclusion in the policy means that there is no coverage for Silberman's claim. *Haulers Ins. Co. v. Pounds*, 272 S.W.3d 902, 905 (Mo. Ct. App. 2008) ("Where an insurer seeks to deny coverage based on a policy exclusion, the burden of establishing that the exclusion applies lies with the insurer."). As set forth above in the Court's findings of fact, the evidence at trial demonstrated that Ruebsam, Plaintiffs' broker, had actual knowledge of Silberman's claim to part of their property prior to closing, and under Missouri law, a real estate broker's knowledge is imputed to her principal. *Rainey v. Foland*, 555 S.W.2d 88, 92 (Mo. Ct. App. 1977). Defendant

further established at trial that the matter was not recorded in the public records or known to Defendant when it issued the policy. Thus, under Exclusion 3(b), Silberman's claim is an "adverse claim[] . . . not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy," and there is no therefore no coverage for the claim under the policy. Accordingly, Defendant has no duty to indemnify Plaintiffs for the loss of the disputed portion of their property, irrespective of the Court's prior Memorandum and Order finding that the extent of Defendant's liability for that loss under the policy would be $3,700 [doc. #37].

### D. Calculation of Damages

Based on Defendant's breach of its duty to defend, Plaintiffs seek to recover as damages the full amount of the policy and their attorneys' fees from both the Silberman suit and the present case. Defendant argues that if it breached the duty to defend, it is only liable for fees related to the underlying Silberman suit.

At the outset, it is clear that Plaintiffs are not entitled to recover the full amount of the policy, $121,500, as damages for Defendant's breach of contract. Such a recovery would be in excess of the damages Plaintiffs have actually suffered and would therefore amount to a penalty for breach of contract, which is impermissible as a matter of Missouri law and of contract law generally. *See, e.g.*, *AAA Uniform and Linen Supply, Inc. v. Barefoot, Inc.*, 81 S.W.3d 133, 137-38 (Mo. Ct. App. 2002).

With respect to the claimed attorneys' fees, Defendant is correct that Plaintiffs are not entitled to recover their attorneys' fees from this declaratory judgment and breach of contract action. In a diversity case, the availability of attorneys' fees is substantive under the doctrine of

*Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), meaning that a state law "denying the right to attorney's fees or giving a right thereto" should be followed, at least where the state law "does not run counter to a valid federal statute or rule of court." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 260 n.31 (1975) (internal citations omitted); *see also Woods Masonry, Inc. v. Monumental Gen. Cas. Ins. Co.*, 198 F. Supp. 2d 1016, 1039 (N.D. Iowa 2002) (listing cases standing for the proposition). Under Missouri law, an insurer that breaches its duty to defend is liable for the attorneys' fees incurred in defending the underlying action, but not for those attorneys' fees incurred in a subsequent suit to establish that the insurer breached its duty to defend. *Missouri Prop. & Cas. Ins. Guar. Ass'n v. Pott Indus.*, 971 S.W.2d 302, 306 (Mo. 1998); *see also Esicorp, Inc. v. Liberty Mut. Ins. Co.*, 193 F.3d 966, 972 (8th Cir. 1999). Although in this case, the litigation expenses of establishing that the insurer breached its duty to defend far exceed those expenses incurred in the underlying suit, the Court does not have the option of ignoring substantive state laws in a diversity case. Furthermore, Plaintiffs have not pointed to any federal statute, rule, or policy suggesting a different result.

The Court therefore finds that Plaintiffs are entitled to recover only those fees directly related to the Silberman litigation. Plaintiffs' documentation of their attorneys' fees, however, fails in many instances to differentiate between expenses from that suit and those incurred with respect to this litigation, in that certain client ledger entries include tasks involving both matters. Accordingly, the Court will order Plaintiffs to supplement their documentation with an affidavit from counsel detailing precisely which fees were incurred in defending against Silberman's suit, and will also afford Defendant an opportunity to respond to that showing.

## III. CONCLUSION

The Court concludes that Plaintiffs are entitled to judgment in their favor on their Count I for a declaratory judgment and their Count II for breach of contract. The Court will enter a declaratory judgment that Defendant had a duty to defend Plaintiffs in the Silberman litigation, a duty that it could not satisfy by tendering the anticipated amount of Plaintiffs' loss should Silberman's claims have been successful. The Court will also enter a corresponding judgment finding that Defendant breached its title insurance contract with Plaintiffs by failing to assume their defense in that litigation. Plaintiffs' damages for such breach, however, are limited to those attorneys' fees and expenses it actually incurred in connection with defending themselves against Silberman's claims; Plaintiffs are not entitled to recover the full amount of the policy or their expenses from the present litigation. In order for the Court to enter a final judgment in this matter, additional documentation from Plaintiffs concerning their litigation expenses is required, as set forth below.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs shall have judgment in their favor on their Count I for a declaratory judgment and their Count II for breach of contract against Defendant.

**IT IS FURTHER ORDERED** that Plaintiffs shall provide the Court with an affidavit from counsel setting forth the attorneys' fees and expenses incurred in connection with *Silberman v. Fleishour, et al.*, Case No. 08SL-CC02506, litigated in the Circuit Court of St. Louis County, no later than October 15th, 2010. Defendant shall file a response to such filing, if any, no later than seven (7) days thereafter, and Plaintiffs may file a reply thereto no later than seven (7) days after Defendant's filing.

An appropriate Order of Judgment will be issued following the parties' compliance with the above Order.

Dated this 28th Day of September, 2010.

_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE